UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHANNON EWING,
    Petitioner,

        v.                                    CIVIL ACTION NO.
                                              05-11850-RGS

KENNETH W. NELSON,
    Respondent.


**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MOTION TO DISMISS PETITION
FOR WRIT OF HABEAS CORPUS (DOCKET ENTRY # 10);
RESPONDENT'S MOTION TO RECONSIDER
PETITIONER'S MOTION TO STAY PROCEEDINGS
(DOCKET ENTRY # 11)**

**March 9, 2006**

**BOWLER, U.S.M.J.**

Respondent Kenneth Nelson ("respondent"), moves to dismiss the above styled petition for writ of habeas corpus filed under 28 U.S.C. § 2254 ("section 2254") as untimely pursuant to 28 U.S.C. § 2244(d) ("section 2244(d)") of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Petitioner Shannon Ewing ("petitioner") attacks his 1989 conviction for murder in the second degree rendered in Massachusetts Superior Court Department (Essex County) ("the trial court") on the following grounds: (1) trial counsel rendered ineffective assistance by failing to procure and introduce evidence of petitioner's psychological evaluations and present a defense of diminished capacity regarding petitioner's mental impairment

(ground one); and (2) the trial court erred in its jury instruction regarding the element of malice aforethought (ground two).  As explained _infra_, the state courts addressed and rejected these arguments on direct and/or collateral review.

This court has accepted various exhibits proffered by petitioner and taken the matter under advisement.  Petitioner is proceeding pro se.  Respondent has filed a motion to reconsider an order by the district judge to stay the proceedings.  (Docket Entry # 11).  The motion to reconsider the stay (Docket Entry # 11) and the motion to dismiss (Docket Entry # 10) are therefore ripe for review.


BACKGROUND

On September 28, 1988, an Essex County grand jury returned an indictment against petitioner for murder.  (Docket Entry # 13, Ex. A).  On April 14, 1989, a jury returned a guilty verdict on the count of second degree murder and petitioner received the statutorily mandated life sentence.  _See_ Mass. Gen. L. ch. 265, § 2.  The facts,[1] as found by the Massachusetts Appeals Court ("the appeals court") detail how petitioner, who had never previously met the victim, was picked up by him on a public street and voluntarily went with him to the victim's office, where the

---

[1]  Although not germane to the present motion, this court briefly recounts the facts in order to create a more complete record.

2

victim indicated he was interested in a homosexual encounter.
Petitioner admitted to a homosexual encounter with the victim and
petitioner's trial testimony described the victim's act of
fellatio upon petitioner.

At some point, petitioner resisted further advances from the
victim. When rebuffed, the victim swore at petitioner. At that
point petitioner simply could have walked away; there is nothing
in his statement that suggests there was any obstacle to his
doing so. When the victim, in spite of the rebuff, took off his
pants and shirt, petitioner admitted that he responded by taking
out his knife and thrusting it forward and deeply into the
victim's neck. This was followed by blows about the head, a stab
wound that almost entered the heart, and several puncture wounds
caused by a carving fork. Then, having taken the keys to the
victim's car from his pants pocket, petitioner fled the
Commonwealth in the victim's car. The victim probably survived
for 20 or 30 minutes after receiving the stab and puncture wounds
and "there was almost no blood left in the body." Commonwealth
v. Ewing, 567 N.E.2d 1262, 1264 (Mass.App.Ct. 1991).

As indicated above, the jury convicted petitioner of second
degree murder on April 14, 1989. (Docket Entry # 13, Ex. A).
Subsequently, on April 24, 1989, petitioner filed a timely notice
of appeal. Commonwealth v. Ewing, 567 N.E.2d 1262. On March 22,
1991, the appeals court issued a decision affirming the second

degree murder conviction.  <u>Id</u>.  Petitioner filed an application
for leave to obtain further appellate review ("ALOFAR") with the
Massachusetts Supreme Judicial Court ("SJC"), but the SJC denied
his ALOFAR on April 29, 1991.  <u>Commonwealth v. Ewing</u>, 571 N.E.2d
28 (1991).

Petitioner filed a motion for a new trial on November 21,
1996, after more than five years had passed.  The trial judge
issued a Memorandum of Decision denying the foregoing motion for
a new trial on January 31, 1997.  Petitioner filed a notice of
appeal on February 18, 1997, but ultimately did not pursue an
appeal.  The appeal was dismissed under Massachusetts Appeals
Court Standing Order 17A on January 6, 1998.[2]  (Docket Entry #
13, Ex. A & D).

The second motion for a new trial was filed on October 25,
2002.  The trial court denied the motion on November 5, 2002, and
the appeals court affirmed on April 19, 2005.  Petitioner sought
further review by filing an ALOFAR with the SJC.  On November 30,
2005, the SJC denied the ALOFAR.  (Docket Entry # 13, Ex. A, E &
F).

In affirming the denial of the second motion for a new

---

[2]  According to the trial court docket, petitioner's appeal of
the motion for a new trial was dismissed on November 3, 1997.
(Docket Entry # 13, Ex. A).  Inspection of the appeals court
docket, however, indicates that, subsequent to that dismissal,
the appeals court allowed petitioner to further pursue the appeal
through a motion to reconsider, before ultimately dismissing it
on January 6, 1998.

trial, the appeals court rejected both of the arguments that petitioner presently raises in ground one and ground two.  In particular, the appeals court concluded that absent some shred of evidence that petitioner's mental condition was impaired at the time of the murder, his claim that his attorney was ineffective for failing to pursue that line of inquiry was unavailing and that the jury charge taken as a whole could not have reasonably been understood as relieving the Commonwealth of its burden on the element of malice.  The appeals court therefore determined that there was no substantial risk of a miscarriage of justice. Commonwealth v. Ewing, 825 N.E.2d 583 (Mass.App.Ct. 2005).

Petitioner signed the present petition on September 5, 2005. (Docket Entry # 1).  The petition was filed on September 13, 2005.  Id.  On December 7, 2005, petitioner filed a motion to stay the proceedings to allow the SJC the opportunity to review the ALOFAR.  (Docket Entry # 5).  The district judge allowed the motion to stay on December 8, 2005.  As previously stated, however, the SJC denied that ALOFAR on November 30, 2005.


## MOTION TO STAY

A stay is typically appropriate, if at all, in mixed petitions that involve one or more meritorious and unexhausted federal claims together with an exhausted federal claim.  The unexhausted claims are dismissed and the exhausted federal

claim[s] held in abeyance while the petitioner returns to state
court to exhaust available remedies.  See, e.g., Zarvela v.
Artuz, 254 F.3d 374, 378-379 (2nd Cir. 2001); Calderon v. United
States District Court for the Northern District of California,
134 F.3d 981, 984-988 (9th Cir. 1998).  Once the petitioner
exhausts state court remedies, the district court will lift the
stay and allow the petitioner to proceed in federal court.
Rhines v. Weber, ___ U.S. ___, 125 S.Ct. 1528, 1534 (2005).

    When faced with a motion to stay in order to exhaust state
court remedies, courts tend to focus on the effect of a denial of
a stay on the petitioner's right to obtain federal review.
Kilburn v. Maloney, 164 F.Supp.2d 113, 115 (D.Mass. 2001).
Often, a stay "may be the only appropriate course in cases in
which an outright dismissal threatens to imperil the timeliness
of a collateral attack."  Neverson v. Bissonette, 261 F.3d 120,
126 n. 3 (Mass.App.Ct. 2001); accord Delaney v. Matesanz, 264
F.3d 7, 14 n. 5 (1st Cir. 2001) (commending stay where "there is
a realistic danger that a second petition, filed after exhaustion
has occurred, will be untimely").

    The limitations period in the instant case, however, had
already run by the time petitioner filed for federal habeas
relief.  As a result, the petition is time barred notwithstanding
a stay.  The removal of the stay therefore would have no effect
on petitioner's right to obtain federal review as that right has

already expired.

Even assuming *arguendo* that the petition is not time barred, a stay remains inappropriate. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Rhines v. Weber, 125 S.Ct. at 1535. Petitioner has provided no evidence of the necessary good cause for his failure to exhaust state court remedies. On the contrary, and as discussed later in more detail, petitioner has shown a failure to act diligently in order to protect his ability to file in federal court.

Finally, petitioner sought the stay to give the SJC the opportunity to rule on his ALOFAR. The ALOFAR, however, was denied by the SJC on November 30, 2005. Accordingly, as urged by respondent and upon reconsideration, the stay should be lifted.


### MOTION TO DISMISS

As previously noted, respondent moves to dismiss the petition as untimely. (Docket Entry # 10). Prior to the AEDPA's enactment, "a prisoner faced no strict time constraints in filing a petition for writ of habeas corpus." Villegas v. Johnson, 184 F.3d 467, 468 (5th Cir. 1999). The AEDPA dramatically altered these circumstances by imposing a one year limitations period for

habeas petitions.  28 U.S.C. § 2244(d)(1).

For habeas challenges to state convictions which became final prior to the AEDPA's April 24, 1996 enactment, this circuit affords petitioners a one year grace period running from April 25, 1996.  See Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999) (applying the reasoning and the one year grace period applicable to section 2255 motion in Rogers v. United States, 180 F.3d 349, 351-352 (1st Cir. 1999), to Gaskins' section 2254 petition).  As reasoned in Rogers, a conviction becomes final for purposes of applying the grace period when the Supreme Court denies an application for certiorari on direct review.[3]  Rogers v. United States, 180 F.3d at 352; accord Shatney v. Strange, 1999 WL 391116 at * 2 (D.R.I. May 20, 1999) ("circuit courts have consistently held that a judgment becomes final upon the completion of certiorari proceedings in the United States Supreme Court").

Inasmuch as petitioner did not seek certiorari review with the Supreme Court, his conviction became "final" within the meaning of section 2244(d)(1)(A) 90 days after the SJC denied the

---

[3]  In contrast, on state collateral review, the 90 day period in which a petitioner could have but did not file a petition for certiorari with the Supreme Court does not toll the one year limitations period.  See David v. Hall, 318 F.3d 343, 345 (1st Cir. 2003).

ALOFAR on direct appeal on April 29, 1991.[4]  See Dunker v.
Bissonnette, 154 F.Supp.2d 95 (D.Mass. 2001) (finding in cases
where the petitioner did not seek certiorari with the Supreme
Court on direct review, the conviction becomes final no later
than the expiration of the 90 day period for filing a petition
for certiorari); see also Neverson v. Farquharson, 366 F.3d 32,
36 (1st Cir. 2004) (noting that "conviction became final when the
ninety-day period for seeking certiorari expired").  The 90 day
time period expired well prior to the AEDPA's April 24, 1996
effective date and thus the one year limitations period would not
have begun to run until April 25, 1996, the day after AEDPA's
enactment.  See Gaskins v. Duval, 183 F.3d at 9 (recognizing that
one year period began to run "on April 25, 1996, the day after
AEDPA's enactment").

Although the one year period forecloses relief for
petitioners who choose to ignore it, the statute serves the
"strong public interest" of encouraging "the prompt assertion of
habeas claims."  David v. Hall, 318 F.3d at 347.  The one year
time limit promotes judicial efficiency, conserves judicial
resources, "safeguards the accuracy of state court judgments by
requiring resolution of constitutional issues while the record is

---

[4]  Petitioner does not claim to fall under a statutory
exception listed in subsections (B), (C) and (D) of section
2244(d)(1).  He does, however, invoke the exception of equitable
tolling.

fresh, and lends finality to state court judgments within a reasonable time." Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000). As aptly explained by the Second Circuit in Acosta, section 2244(d) "'was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions.'" Acosta v. Artuz, 221 F.3d at 123.

Under section 2244(d)(2), however, petitioner receives the benefit of a statutory provision which tolls the one year period during the time a "properly filed" post-conviction state application for collateral review is "pending." 28 U.S.C. § 2244(d)(2); Gaskins v. Duval, 183 F.3d at 9-10 (applying section 2244(d)(2) tolling provision to section 2254 petition involving conviction which became final prior to April 24, 1996). Section 2244(d)(2) provides that:

> The time period during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

The exclusion of this time period comports with principles of comity and encourages a petitioner to "first exhaust his state court remedies before seeking federal habeas relief." Gaskins v. Duval, 183 F.3d at 10; accord Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999) (tolling "entire period of state proceedings" under section 2244(d)(2) "upholds 'the principle of comity that

underlies the exhaustion doctrine'"").  In particular, consistent
with the requirement that a petitioner exhaust state court
remedies, section 2244(d)(2) tolls the period during which the
petitioner is attempting to exhaust such remedies in the state
court system.  See generally David v. Hall, 318 F.3d at 345
(noting, in the context of discussing section 2244(d)(2), that
the reason for the tolling provision is obvious inasmuch as "a
federal petition would likely be dismissed or held as premature .
. . until state remedies were exhausted").

     At the time the one year grace period began to run,
petitioner's direct appeal had become final and he had no post
conviction application for collateral review "pending."  Hence,
the running of the limitations period began on April 25, 1996,
and ran uninterrupted until November 21, 1996, when petitioner
filed his first motion for a new trial.  During this period from
April 25, 1996 to November 21, 1996, 210 days passed, leaving
petitioner with 155 days to file the federal petition once the
limitations period began to run again.  Petitioner's appeal
relating to the first motion for a new trial was dismissed on
January 6, 1998, thereby resuming the running of the limitations
period.  See, e.g., Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.
1999) (one year grace period began to run on April 24, 1996,
until filing of state collateral application 314 days later);
Barnett v. Lemaster, 167 F.3d 1321, 1322 (10th Cir. 1999)

(limitations period ran unabated until April 17, 1997 filing of state collateral application).  Consequently, petitioner was left with 155 days in the limitations period to file a timely petition.  The limitations period therefore expired on June 10, 1998.

Petitioner's second motion for a new trial, filed on October 25, 2002, has no effect on the timeliness of the federal petition because it was not filed until after the limitations period had already expired.  See, e.g., Cordle v. Guarino, 428 F.3d 46, 48 n. 4 (1st Cir. 2005) ("'Section 2244(d)(2) only stops, but does not reset, the [AEDPA] clock from ticking and cannot revive a time period that has already expired.' . . . Because [the petitioner's] motion for a new trial was filed well after her AEDPA's limitations period had expired, it did not stop or reset the clock and does not help [the petitioner.]"); see also, Dunker v. Bissonnette, 154 F.Supp.2d 95, 103 (D.Mass. 2001) ("tolling provision does not give petitioner the ability to revive an expired grace period by the simple expedient of filing a fifth motion for new trial.  Such an ability would eviscerate the one year grace period.").

The signed federal petition is hand dated September 5, 2005.  Assuming that the petitioner used the prison system for forwarding and recording legal mail, the earliest applicable filing date, September 5, 2005, see Morales-Rivera v. U.S., 184

F.3d 109, 111 (1ˢᵗ Cir. 1999); Rhodes v. Senkowski, 82 F.Supp.2d
160, 165 n. 7 (S.D.N.Y. 2000) ("absent evidence to the contrary,
the Court assumes that [petitioner] gave his petition to prison
officials for mailing on the date he signed it"), nonetheless
renders the petition untimely.

Absent equitable tolling therefore the petition is time
barred. Indeed, petitioner forthrightly admits that the petition
is untimely. Consequently, he relies on the doctrine of
equitable tolling as a means to avoid dismissal.

Equitable tolling is undoubtedly available under section
2244(d). The First Circuit formally recognized the doctrine as
applicable to the non-jurisdictional statute of limitations in
section 2244(d) in May 2004. Neverson v. Farquharson, 366 F.3d
32, 41 (1ˢᵗ Cir. 2004). Prior thereto, the court assumed the
applicability of the doctrine to section 2244(d) but found it
unavailing either because of a finding that the lower court's
refusal to equitably toll the statute was not an abuse of
discretion, see, e.g., Donovan v. Maine, 276 F.3d 87, 92-94 (1ˢᵗ
Cir. 2002); Delaney III v. Matesanz, 264 F.3d at 13-16, or
because the court rejected the doctrine's application outright.
See Lattimore v. DuBois, 311 F.3d 46, 55-58 (1ˢᵗ Cir. 2002)
(denying equitable tolling and reversing lower court's finding
that habeas petition was timely).

Equitable tolling to avoid the strictures of section

13

2244(d)(1), however, is the exception not the rule and is

"invoked only 'sparingly.'"  Neverson v. Farquharson, 366 F.3d at

41 ("equitable tolling should be invoked only 'sparingly'");

Lattimore v. DuBois, 311 F.3d at 55 ("'[W]e have made it pellucid

"that equitable tolling, if available at all, is the exception

rather than the rule"'"); Donovan v. Maine, 276 F.3d at 93

("'equitable tolling, if available at all, is the exception

rather than the rule'"); Delaney III v. Matesanz, 264 F.3d at 14

("[i]n the AEDPA environment, courts have indicated that

equitable tolling, if available at all, is the exception rather

than the rule").  Resort to equitable tolling of the AEDPA's one

year limitations period is "'deemed justified only in

extraordinary circumstances.'"  Neverson v. Farquharson, 366 F.3d

at 41; Lattimore v. DuBois, 311 F.3d at 55 (same); Donovan v.

Maine, 276 F.3d at 93 (same); Delaney III v. Matesanz, 264 F.3d

at 14 (same); accord David v. Hall, 318 F.3d at 346 ("[i]f

equitable tolling is available to extend section 2244(d)'s

limitations period, it can only do so for the most exceptional

reasons" or "only for the most exigent reasons"); see also Jobe

v. Immigration and Naturalization Service, 238 F.3d 96, 100 (1st

Cir. 2001) (stating, albeit in context of 180 day statutory

period applicable to immigration proceedings, 8 U.S.C. §

1252b(c)(3)(A) (repealed), that "equitable tolling is a

'sparingly' invoked doctrine").[5]

Petitioner "bears the burden of establishing the basis" for such tolling. Neverson v. Farquharson, 366 F.3d at 41. In general, "a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, __U.S.__, 125 S.Ct. 1807, 1814 (2005).

Examining diligence, inordinately long periods of time in which a petitioner takes little action for relief often foreclose federal habeas review. See Masso v. Matesanz, 2001 WL 1688900 at * 2 (D.Mass. Dec. 5, 2001) (the petitioner's failure to file new trial motion over span of years illustrated the petitioner's lack of diligence in pursuit of his rights); see Sanchez v. Hall, 2001 WL 1688901 at * 2 (D.Mass. Dec. 4, 2001) ("eight month delay does not bespeak sufficient diligence to warrant federal habeas relief"); see Delaney III v. Matesanz, 264 F.3d at 14 (noting the lower court's finding that "while the petitioner had pursued a variety of claims over a nine-year period, he had not done so in

---

[5]  Jobe is useful because the case identifies five factors that should guide a court in evaluating equitable tolling.  These factors are:  "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." Jobe v. Immigration and Naturalization Service, 238 F.3d at 100 (citing Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998)).

an especially assiduous fashion").

After the SJC denied petitioner's ALOFAR on April 29, 1991, he waited over five years, until November 21, 1996, to file a motion for a new trial. The trial court denied the motion on January 31, 1997. Petitioner filed a notice of appeal, but ultimately did not pursue an appeal, and as a result, the direct appeal was dismissed under Massachusetts Appeals Court Standing Order 17A on January 6, 1998. Petitioner then waited nearly five more years to file a second motion for a new trial on October 25, 2002.[6] After his second motion for a new trial was denied, petitioner's appeal of the denial was again dismissed for failure to prosecute, on March 21, 2003. It took petitioner more than 13 months, until April 26, 2004, to move for reinstatement of his appellate rights. (Docket Entry # 13, Ex. F).

Such long periods, some a matter of years, of inaction in seeking collateral review, such as in filing the first and thereafter the second motion for a new trial, illustrate petitioner's lack of diligence. Petitioner's failure to act diligently to protect his ability to file in federal court by, for example, promptly filing the federal petition, hinders petitioner's entitlement to equitable tolling.

Justification for equitable tolling further depends on the

---

[6] As previously explained, the appeal of the second motion for a new trial remained pending at the time petitioner filed the present petition in September 2005.

requirement that some extraordinary circumstance stood in petitioner's way, preventing the filing of the petition. No such circumstance is evident in the present case. It is clear that ignorance of the law, even for a pro se incarcerated prisoner, typically does not excuse prompt and timely filing. <u>Fisher v. Johnson</u>, 174 F.3d 710, 714 (5th Cir. 1999); see <u>Pearson v. State of North Carolina</u>, 2001 WL 113791 at * 3 (W.D.N.C. Jan. 29, 2001) (section 2254 petitioner's ignorance of proper AEDPA calculation did not warrant equitable tolling); <u>Rhodes v. Senkowski</u>, 82 F.Supp.2d 160, 172 n. 7 (S.D.N.Y. 2000) (lack of knowledge of law did not excuse timely filing under section 2244(d)).

Moreover, the length of time for which petitioner has represented himself and his prior experience with filing in various courts during this time suggest that petitioner is familiar with the judicial process and, prior to this petition, at least recognized (although sometimes ignored) deadlines and time limitations. While petitioner may have met with certain difficulties in responding himself pro se, there are no apparent extraordinary circumstances which prevented petitioner from filing the instant petition.

Prejudice is also a factor to consider in assessing the propriety of equitable tolling. Given the passage of time, there is certainly prejudice to the prospect of retrying this case. See <u>David v. Hall</u>, 318 F.3d at 347 (recognizing that "grant of

17

habeas relief leaves the state free to retry the petitioner, but this becomes increasingly hard to do as memories fade, evidence disperses and witnesses disappear").

Finally, this is also not a situation where a petitioner is afforded no other avenue of post conviction relief.  See David v. Hall, 318 F.3d at 346 n. 4 (noting in parenthetical that the court excused a one day delay due to an attorney error "where the petitioner faced the death penalty and *would not have any other avenue of post-conviction relief*") (emphasis added).  To the contrary, the state courts fully reviewed and rejected the claims.

In sum, weighing and analyzing the totality of the circumstances, see Donavan v. Maine, 276 F.3d at 93 ("[w]hat matters is that the court painstakingly weighed and analyzed the totality of the circumstances" in applying the equitable tolling doctrine), this court finds that equitable tolling is not available.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[7] that the motion to reconsider the motion to stay

---

   [7] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the

(Docket Entry # 11) be **ALLOWED** and the stay be lifted.  This court further **RECOMMENDS**[8] that the motion to dismiss (Docket Entry # 10) be **ALLOWED** and that the petition be **DISMISSED** as untimely under the AEDPA.


      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

[8]  See previous footnote.